UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. 5: 19-139-DCR |
| ) | and |
| V. ) | Civil Action No. 5: 21-279-DCR |
| ) | |
| KAHAD A. WUUPINI, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Kahad Wuupini has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [Record No. 246] He asserts two claims, both alleging that his attorney provided ineffective assistance of counsel. [*Id.*] Wuupini's motion will be denied in part. His first claim will be denied because it fails to meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, the Court reserves ruling on his second claim until after an evidentiary hearing has been conducted.

I.

An indictment naming Wuupini, Thomas Inkoom, and Baaki Majeed was returned by a Lexington, Kentucky grand jury on August 15, 2019. [Record No. 1] The indictment charged Wuupini with a total of seven counts stemming from his role in an romance fraud scheme conducted online. [*See id.*] In summary, Wuupini and his co-conspirators convinced the victim that she was in a romantic relationship with "James Nehmer," a fictitious persona adopted by an unknown co-conspirator living in Ghana. [Record No. 204, p. 5] Over the course of the relationship, the conspirators persuaded the victim to transfer a total of

$757,000.00 to a variety of individuals and entities. [*Id.*, p. 5–7]  Wuupini helped launder the proceeds of the fraud using a business and various bank accounts.  And he recruited Inkoom and Majeed to do the same. [*Id.*, p. 7]

Wuupini pleaded guilty on March 16, 2020, to Count 2 of the indictment, which charged him with conspiracy to commit certain money laundering offenses in violation of 18 U.S.C. § 1956(h). [Record Nos. 103 and 106]  Prior to sentencing, Wuupini's appointed counsel William Daniel Carman filed three objections to the defendant's Presentence Investigation Report.  The only objection relevant here took issue with application of a leadership enhancement under United States Sentencing Guidelines § 3B1.1(a). [Record No. 152]  However, this objection was withdrawn at the sentencing hearing held on October 30, 2020.  Wuupini was sentenced to a total of 79 months' imprisonment, to be followed by a three-year term of supervised release. [Record No. 180]  Wuupini did not appeal this sentence, although he claims he directed his counsel to file a notice of appeal on his behalf. [Record No. 246, p. 5]

**II.**

Title 28 of the United States Code, section 2255, permits a prisoner in custody under a federal sentence to move the court that imposed it to vacate, correct, or set it aside on the grounds that the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory

limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid. *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

A defendant in a criminal prosecution has a constitutional right to reasonably effective assistance of counsel for his defense. U.S. Const. amend. VI. Under the two-part test announced in *Strickland*, a defendant challenging his or her conviction under § 2255 must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. 466 U.S. at 687. When deciding ineffective-assistance claims, "courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).

Whether counsel's performance was deficient is determined by reference to an objective standard of reasonableness—specifically, "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. While the inquiry considers all the circumstances of a particular case, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 688–89. Strategic choices made after thorough investigation of law and facts are virtually unchallengeable. *Hutchinson v. Bell*, 303 F.3d 720, 754 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690–91).

A defendant must "affirmatively prove prejudice" under the second prong of the *Strickland* test. *Hendrix v. Palmer*, 893 F.3d 906, 921 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 693). "Counsel's errors must have 'actually had an adverse effect on [the defendant's] defense.'" *Id.* (quoting *Strickland*, 466 U.S. at 693). In the sentencing context, this requires that the defendant demonstrate that his sentence was increased by the deficient performance

of his attorney. *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

### III.

### A. Withdrawal of Objection Claim

Wuupini claims that his appointed attorney provided ineffective assistance by withdrawing an objection to the application of a leadership enhancement under United States Sentencing Guidelines § 3B1.1(a). [Record No. 246-1, p. 1] This enhancement provides for a four-level increase to the total offense level if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Wuupini argues there is insufficient evidence to establish either prong of this enhancement and that his counsel only withdrew the objection to "appease the government." [Record No. 262, p. 2–3] Because, however, the enhancement was correctly applied, Wuupini cannot meet the *Strickland* standard. *See Strickland*, 466 U.S. at 687, 697. His claim will be denied.

There is no question that the criminal activity in this matter "involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Wuupini admits that there were at least four knowing participants in the scheme—himself, co-defendants Majeed and Inkoom, and the unknown individual using the "James Nehmer" persona. [Record No. 246-1, p. 1] These four conspirators laundered their fraud proceeds using the services of at least a dozen other individuals and entities. [Record No. 204, p. 5–9] Whether these parties were knowing participants in the scheme, their involvement *at least* creates the "functional

equivalent of an activity involving five criminally responsible participants."[1]  *See United States v. Anthony*, 280 F.3d 694, 699 (6th Cir. 2002) (citing *United States v. Carrozzella*, 105 F.3d 796, 802–04 (2d Cir. 1997)) (explaining that an offense is "otherwise extensive" if the combination of knowing and unknowing participants constitutes the functional equivalent of five criminally responsible participants); *see also* U.S.S.G. § 3B1.1 n.3 ("In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. *Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.*") (emphasis added).

And Wuupini played a key role in organizing the criminal activity.  U.S.S.G. § 3B1.1(a).  He admits that he recruited co-defendants Majeed and Inkoom to join him in the scheme. [Record No. 246-1, p. 1]; *see* U.S.S.G. § 3B1.1 n.4 (listing recruitment of accomplices as a factor supporting a leadership or organizing role).  He also served as the communicating link between the Nehmer persona and the other conspirators.  [*See* Record No. 261-2]; *see also United States v. Ortiz-Martinez*, 1 F.3d 662, 677 (8th Cir. 1993) (affirming application of the enhancement where defendant's beeper served as the common communicating link between the conspirators).  Text messages among the conspirators reveal that Wuupini played a role in deciding what bank accounts to open and in negotiating terms with others.  [Record No. 261-2, p. 5–7]; *see also United States v. Levine*, 970 F.2d 681, 691 (10th Cir. 1992) (affirming application of the leadership enhancement where defendant directed others in establishing bank accounts to hide their fraud); *United States v. Connolly*, 51 F.3d 1, 5 (1st Cir. 1995)

---

[1] And if any one of these individuals or entities was in fact a knowing participant in the scheme, then it "involved five or more participants" without regard to whether it was otherwise extensive.  U.S.S.G. § 3B1.1(a).  The enhancement is proper under either scenario.

(affirming application of the leadership enhancement where defendant negotiated terms with other conspirators).  Finally, notes from Defendant Majeed illustrate that Wuupini played the organizational role of collecting from and making payments to the other conspirators.  [Record No. 261-1, p. 7, 14]

Because the enhancement would have been applied even if Wuupini's counsel had maintained the objection, he cannot demonstrate that his sentence was increased by the withdrawal.[2]  *Cf. Spencer*, 254 F. App'x at 525 ("[P]rejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney."). Accordingly, this ineffective assistance of counsel claim fails to meet the *Strickland* standard and will be denied.  *See* 466 U.S. at 697 ("[T]here is no reason for a court . . . to address both components of the [ineffective assistance] inquiry if the defendant makes an insufficient showing on one.").

   B.   **Notice of Appeal Claim**

Wuupini next claims that his counsel failed to file a notice of appeal as he allegedly requested.  [Record No. 246, p. 5]  It is well-settled that "the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."

---

[2]   Moreover, even if the enhancement did not apply, Wuupini has still failed to prove his attorney's withdrawal of the objection falls below "the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Counsel's decision was made following a thorough investigation of the law and facts, recognizing that pursuing an objection likely to be overruled "can be ultimately prejudicial for a defendant."  [Record No. 251-1, p. 2–3]  This kind of strategic decision by counsel is virtually unchallengeable.  *Hutchinson*, 303 F.3d at 754.  And other than the unsupported supposition that his counsel withdrew the objection to "appease the government," Wuupini does little to challenge this decision.  [Record No. 262, p. 2] Accordingly, he has failed to overcome the "strong presumption" that counsel provided reasonable assistance.  *See Strickland*, 466 U.S. at 688–89.

*Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). Such a violation satisfies both prongs of the *Strickland* test without any further showing.[3] *Id.* at 357.

Thus, if Wuupini requested that his counsel file a notice of appeal, his motion should be granted. The defendant alleges that he made such a request, but his former counsel has "no memory of . . . speaking with [Wuupini] . . . concerning filing a Notice of Appeal." [Record No. 251-1, p.3] Counsel does contend that it is his "standard practice" to file a notice upon request of a defendant and provides several examples of cases where he has done so. [*Id.*] However, the record is insufficient to resolve this factual dispute. Accordingly, the Court will defer ruling on this claim until after an evidentiary hearing has been conducted.

### IV.

**A.    Evidentiary Hearing**

Wuupini requests an evidentiary hearing. [Record No. 246, p. 12] "Unless the [§ 2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record,

---

[3]    This is true even where, as here, the defendant has waived all or most of his rights to appeal. *See Garza v. Idaho*, 139 S. Ct. 738, 746–47 (2019).

inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotation marks and citation omitted).

An evidentiary hearing is required for Wuupini's second claim. Wuupini has presented a factual dispute regarding whether he requested a notice of appeal. Thus, the record presently before the Court does *not* "conclusively show that [he] is entitled to no relief." § 2255(b); *see also Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015) ("If a habeas petitioner presents a factual dispute, then the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims."); *United States v. Cunningham*, No. 4:13CR458, 2015 WL 7455565, at *2 (N.D. Ohio Nov. 23, 2015) ("[W]here the ultimate resolution rests on a credibility determination, an evidentiary hearing is especially warranted."). Further, the United States agrees that a hearing is appropriate. [Record No. 251, p. 6–7] Accordingly, Wuupini's request for an evidentiary hearing regarding his second claim will be granted.

Again, however, no hearing is required for his first claim. The record "refutes [Wuupini's] factual allegations" and otherwise establishes that this claim is without merit. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

### B. Certificate of Appealability

When a court determines that a § 2255 motion will be denied, it must determine whether to grant a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1)(B); Rule 11 of the *Rules Governing Section 2255 Proceedings*. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). "[A] substantial showing of the denial of a right includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented

were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (quotation omitted).

Here, reasonable jurists would not debate that Wuupini's first claim should be denied.[4] He has plainly failed to establish ineffective assistance of counsel based on the withdrawal of an objection at sentencing. No reasonable jurist would contend otherwise. Therefore, no COA shall issue regarding this first claim.

## V.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. Defendant/Movant Kahad A. Wuupini's motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 [Record No. 246] is **DENIED**, in part. The defendant's first claim alleging ineffective assistance based on the withdrawal of an objection at sentencing is **DISMISSED**. A final determination concerning Wuupini's second claim is reserved until after an evidentiary hearing has been conducted.

2. Wuupini's request for an evidentiary hearing is **GRANTED**. The hearing shall be limited to the issue of whether Wuupini directed his prior attorney to file a Notice of Appeal on his behalf.

3. Consistent with the Court's ruling outlined above, an evidentiary hearing is scheduled for **Monday, June 13, 2022**, beginning at the hour of **9:00 a.m.**, at the United States Courthouse in Lexington, Kentucky.

---

[4] Because the Court defers ruling on Wuupini's second claim, it need not determine whether to issue a COA for that claim. *See* Rule 11 of the *Rules Governing Section 2255 Proceedings* ("The District Court must issue or deny a certificate of appealability *when it enters a final order adverse to the applicant*.") (emphasis added).

4. Pursuant to 18 U.S.C. § 3006A, the Clerk of Court is **DIRECTED** to appoint counsel by random draw from the CJA list for the limited purpose of representing Wuupini at the evidentiary hearing and filing any post-hearing brief that may be subsequently ordered by the Court. This appointment is provisional, subject to the receipt of verifying documentation.

5. The Clerk of Court shall promptly provide Wuupini with a CJA affidavit (CJA 23). Wuupini is **DIRECTED** to return the completed form to the Clerk with a written confirmation requesting appointment of counsel on or before **Tuesday, May 3, 2022**.

6. The Clerk of Court is further **DIRECTED** to provide a copy of this Memorandum Opinion and Order to the United States Marshals Service. The United States Marshals Service shall secure Wuupini's presence for the evidentiary hearing to be conducted on June 13, 2022, and shall have Wuupini in the district at least one week in advance of the hearing to allow consultation with counsel. A copy of this order shall also be provided to the United States Bureau of Prisons.

7. The United States shall secure the presence of Wuupini's former counsel, William Daniel Carman, to testify during the evidentiary hearing to be conducted on June 13, 2022.

Dated: April 6, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky